Thank you, and may it please the court. Nicholas Edwards is challenging three conditions of supervision. He objected to each of the conditions at the trial level. They all significantly restrain his liberty, particularly the no contact provision and the no employment with access to minors provision. And all three of these conditions are unwarranted under the facts of the case. I'm going to focus on the latter two, just because they're the most impactful, and also the decision on them was the most problematic. And they're grounded in the notion that Edwards presents a present elevated risk of some sort of sexual abuse of minors. But he's never sexually abused a minor. There are these two child pornography convictions from more than 16 years ago, with the actual offenses being even older than that. But there's been nothing in the interim, and it's not as if this is itself a child pornography case, which has been the case in some of the precedent that both parties cited, where either he's going to sentencing on child pornography now, or he was sentenced on child pornography, now just coming out of prison. At this point, we have many years of Mr. Edwards living in the community, and while he has not been ideally law abiding, they have been in ways that are unrelated completely to the abuse of any minors. And his ability to interact with the public, which includes minors, in the normal way that we are all used to interacting, is not appropriately tailored for this case. But Ms. Veit, what about the assessment that showed he had continued sexual interest in children? Right. So there was a, I think it was out of the Minnesota sex offender treatment in around 2015, that he had sexual interest in children. I think we can probably assume safely that anyone who's ever been convicted of a child pornography offense has a sexual interest in children. And I'm not sure that... But when a judge has a defendant with a prior conviction for possessing child pornography, and there are indications that he has this enduring sexual interest in minors, and he has a pattern of non-compliance with registration requirements and other conditions, why would it not be reasonable for a judge to be concerned about the prospect that he might commit a, well, as you call it, a hands-on offense? And, of course, he's allowed to interact with the server at McDonald's who might, or let's say someone he buys a newspaper from at a newspaper stand that might be underage. He's allowed to interact with that sort of service individual. Sure. And that is truly the only exception that doesn't require permission is that sort of commercial interaction. So interaction with somebody at a ballgame, like in one of this court's cases with somebody who happens to be sitting next to him, that would not be covered by the exception. And certainly that was exactly Judge Peterson's reasoning that it's sort of a sexual interest in children, plus just generally committing these check writing crimes and other things that show him to be kind of a not-perfectly-law-abiding person. But again, I think the sexual interest in children is going to be a fact of anyone who's ever convicted of a child pornography offense. And the question is, do we then subject them to a condition interfering with their liberty to this extent for the rest of their at which we say, you know, this person hasn't ever harmed a child in this way, and this offense is very old, and although he's not necessarily our ideal law-abiding citizen because he's committing these various misdemeanor offenses, he's not always registering, he is, he has internalized what he absolutely cannot do, and that is possess child pornography, harm children in any way. And so to the extent he has this enduring interest in children, what we know is that he's never acted on it, or at least there's certainly no evidence he's ever acted on it, and that he, so there's no reason for us to believe he will act on it in the future, particularly in a case like this where the main argument he was making at the district court level is concern about how the no-contact provision would interfere with his relationship with his brother and sister-in-law, and there's not even an exception for family, although there's certainly nothing in his history or even in the nature of kind of non-compliance law-breaking that would suggest any problem with that. But the probation officer has the discretion to permit that and to create exceptions, correct? That's correct. This gives the probation officer all the discretion in that regard, and this I think it's not necessarily, we don't always agree on what it means to be reasonable, and he is looking for assurance that he will be able to maintain his family relationships, and I think the judge felt like, you know, that's not my call, we'll leave that for the probation officer, and I think if there's anything that this court's cases on conditions of supervised release has made clear, it's that it is the judge's call, the judges should be making these calls at sentencing where there's something that's just not warranted by the facts of the case, rather than simply leaving it up to the probation officer and leaving a person on supervision to wonder, should I take this action or should I not take this action, when the action might be when it's... Well, Judge Peterson did offer to reconsider the conditions if Mr. Edwards believes they are unwarranted or unworkable. He said, give me a call. That was, you know, you don't hear that a lot. Well, yes, and it's always true that conditions can be modified during a term of supervision, so it is unusual among sentencing claims in that regard, but at the same time, the decision that the judge makes at sentencing needs to be one that is narrowly tailored based on the facts of the case to promote rehabilitation and deterrence, the goals of supervision. And I will reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. Feit. Ms. Pfluger? May it please the court. Counsel, my name is Julie Pfluger. I represent the United States in this matter. This case is about three conditions of supervised release, and they were objected to on the grounds of tailoring in the district court, and these conditions were adequately tailored, and so they should be reviewed for abuse of discretion. And as case law says, the district court has significant discretion when fashioning conditions of supervised release, and the district court did look at deterrence, rehabilitation, and protection of the public based on not just Mr. Edwards' current conviction for the SORNA violation, but also his history and his personal characteristics, which are what the court should be looking at. Ms. Feit wants to cabin this into only looking at this is a SORNA violation, and so this is a paper violation where he didn't register, but that doesn't take into account the full picture of who Mr. Edwards is and what the court should look for. And Judge Peterson specifically said that he carefully considered all the factors and that his conditions of supervised release were not cabined strictly to that which arises from the offense of conviction. He looked at the fact that in 2015, Mr. Edwards was found to still be currently sexually attracted to children. Now, Ms. Feit said that every defendant who is convicted of a child pornography offense would have an attraction to children. However, Mr. Edwards is enduring. Still in 2015, he's saying he's sexually attracted to children. He's turned on by the idea of adults having sexual relations with children. That is something the court should take into consideration, not merely that this is a paper violation where he didn't register. And Judge Peterson also carefully considered that Mr. Edwards has a history of untruthfulness. In some of the PSR reporting, it was said Mr. Edwards' biggest problem in treatment is that he lied. He lied so much that the treatment providers couldn't determine what was truth and what was not truth. These are all things that Judge Peterson should be and did take into consideration when he fashioned these conditions. And saying that because he didn't have a hands-on offense, he's not a risk to minors, also isn't taking into account the full picture. It's true, he does not have a hands-on offense. He does have a distribution of child pornography and a possession of child pornography. But having hands-on on a child is not the only thing we need to protect the public from. There are a lot of crimes and harms to minors that I can think of that have nothing to do with hands-on. Possessing child pornography, distributing child pornography, is a harm that you want to protect the public from, and it has nothing to do with hands-on. Talking to children in inappropriate things, those are things that you want to protect children from. So to say that he doesn't have a hands-on, so we don't have to worry about him harming the public, just isn't taking into account the full picture of what Judge Peterson was looking to protect the public from. If there's no questions on that, I can move on to the second problem, which was the vagueness. So the government asserts that the vagueness challenges were waived because they weren't brought up in front of the district court. What was brought up in front of the district court is that they weren't tailored to his offense. So the government argues that these shouldn't be considered, but if they are, the review would be plain error, which is clear and obvious error. And the things that Mr. Edwards is asserting are unclear and would cause him confusion are such simple words such as must or commercial. He's saying those words confuse him and he won't know what he's supposed to do, and so they're unconstitutionally vague. But if these words are vague, then every word in every condition is vague. If you don't know what must means, I can't think of a more simple, straightforward word. So as this court has found, probation is assumed to apply these conditions in a reasonable manner, and conditions of supervised release are always assumed to exclude inadvertent and unintentional violations. So trying to stretch and say, well, I don't know what must means and my probation officer is going to violate is not only a stretch of the word must, but it's also not giving and not following the law as far as what probation is assumed to do and what they have to do. And also, as this court noted, Judge Peterson said you can come back at any point and talk to me about these conditions if you don't like the way they are being implemented. And he said, you know, once you have some time under your belt where you have complied, I will consider taking off some of these conditions. That's how supervised release works. You build up some trust, you tell the truth, you follow your conditions, and the court, as Judge Peterson specifically said, will consider modifying these conditions. So for the first argument, the government asserts that there was no abuse of discretion. The conditions were adequately tailored based on not just the sworn-off violation, but on the full picture of who Mr. Edwards is. And then on the vagueness, the government asserts that the defense waived this, and if they didn't, that there was no plain error. And for these reasons, the government asked this court to affirm the three challenged convictions of supervised release. Thank you, counsel. Thank you. Ms. Fyatt, rebuttal? Thank you. First, I just want to say we absolutely agree with the government that this court should say that unintentional and inadvertent violations can't result in revocation of supervised release. It hasn't said that in the past, although the Second Circuit has. And that would alleviate some of the concerns here for the future, although not all of them. And in terms of this waiver argument, this court in several cases has said that narrow tailoring is about vagueness and overbreadth. And it's sort of, you know, in terms of the language, if commercial is not vague and literally means commercial, well then, okay, then food pantries are covered and everything is covered. Then we have an overbreadth problem. They're all wrapped up into the same concerns that were raised to the district judge. So it's not a waiver, a forfeiture. It's just a different way of presenting the argument on appeal to try to match what this court was doing in the past, although it does seem like it's moving in a different direction now. But the bottom line is that these conditions that don't have a science or element, that don't have clear exceptions that cover things that we would want people on supervision to be doing, it doesn't make sense for that to be in the conditions. Just a few other points I want to make. One, absolutely, child pornography is a harm, and I would never say otherwise. But there are numerous conditions that we did not challenge that go toward that harm. The only harm that we're trying to deal with in having a no contact with minors or a no employment where you can have access to minors, this is about sexual abuse of children, and that's what there's just nothing here supporting. And then I believe that my friend said that there was something in the record about he was turned on by adults having sex with children. That goes farther than the record. I believe all it says is that this report found that he had an enduring interest in children. I think for better or worse, there is increasing recognition in our society, including from the Supreme Court, that people's sexual interests are somewhat enduring. But again, the question is, does that sexual interest mean that indefinitely Mr. Edwards is not able to interact with the public, including minors? Thank you. Thank you, Ms. Fite. The case is taken under advisement. And that was our last case this morning, so we are in recess.